UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIS OF TEXAS, INC., | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. H-09-cv-0404 |
| v. | § § | |
| BRIAN C. STEVENSON, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. No. 5.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion should be denied.

**I.   BACKGROUND**

Plaintiff Willis of Texas, Inc. ("Willis") is an insurance broker and a Texas corporation with its principal place of business in Houston Texas. (Pl. Compl. ¶ 1.)[1] Until 1998, Defendant Brian Stevenson was a shareholder of Stevenson Insurance Services. Inc. ("SISI"), a general insurance agency in Texas. (*Id.* at ¶ 6.) In 1998, SISI merged with HRH, a full-line insurance agency, and Stevenson became an HRH employee. (*Id.*) In consideration for selling his shares of SISI to HRH, Stevenson received more than $550,000 in cash and shares of HRH. (*Id.* at ¶ 7.)

As an express condition of the sale of SISI to HRH, Stevenson executed an Employment Agreement and Covenant Not to Compete, which contained reasonable restrictive covenants and

---
[1] The above facts are drawn from Plaintiff's Complaint.

a confidentiality agreement. (*Id.* at ¶¶ 8-10.) Stevenson continued to have access to confidential information about HRH clients throughout his employment. (*Id.* at ¶ 11.) In 2004, Defendant Linda Garcia was hired by HRH as an account manager. (*Id.* at ¶ 27.) She also agreed to abide by the HRH Code of Conduct, which contained a confidentiality agreement. Garcia was hired specifically to assist Stevenson in the management of the employee benefits customer accounts that he produced and serviced on behalf of the Company. (*Id.*)

In 2008, Willis acquired HRH. (Pl. Compl. ¶ 28.) Both Garcia and Stevenson became Willis employees, and Stevenson's Employment Agreement was transferred to Willis by operation of law. (*Id.*) Both Garcia and Stevenson agreed to comply with Willis' Corporate Data Policy. (*Id.*) The Corporate Data Policy, among other things, prohibits employees from using email to solicit others for commercial ventures, sending or posting confidential material, trade secrets, or proprietary information outside the organization, and using company software and business equipment for personal or private use. (*Id.* at 29.)

Plaintiff alleges that, before Stevenson tendered his resignation to Plaintiff, he began soliciting Willis customers and unlawfully using confidential information. (*Id.* at 30.) Stevenson allegedly accessed Willis' computer system to transmit confidential information to his personal email account and/or the personal email account of an agent of BCSG, for purposes of using the information to compete against Willis. The confidential information included known customer contact lists and business information as well as known customer proposals. Plaintiff argues that Willis' computer system was unauthorized and expressly prohibited by Stevenson's Employment Agreement, the Corporate Data Policy, and the Code of Conduct. (*Id.*) Stevenson also allegedly diverted Willis' corporate opportunities and breached his duty of loyalty by soliciting known customers to his company, BCSG. On November 19, 2008, Stevenson used his Willis computer

to send an email to Audrey Stevenson, his wife and an officer in BCSG, attaching two agent of record letters from Leaman Building Materials, Inc. (*Id.* at ¶ 31.) At the time, Leaman was a known customer of Willis. The attached agent of record letters ("AORs"), which serve to notify an insurance company of a change in brokers, appointed Audrey Stevenson of BCSG as its agent of record effective January 1, 2009. (*Id.*)

On December 10, 2008, Stevenson tendered notice of his "immediate resignation." (*Id.*) Plaintiff argues that, by failing to give it the mandated 30-day notice contained in the Employment Agreement, Stevenson denied Plaintiff its bargained-for transition period and the opportunity to assign new brokers to the known customers in order to retain their business. (*Id.* at 32.) Customers immediately began submitting AORs indicating that their accounts were being transferred to BCSG. More than fifty customers have terminated their insurance brokerage relationship with Plaintiff and are now being serviced by BCSG in violation of Stevenson's Employment Agreement. The annual revenue to Plaintiff for servicing these customers exceeded $700,000. (*Id.* at ¶ 33.) Plaintiff immediately began efforts to retain the business of the known customers by assigning other brokers to contact and service these customers. Plaintiff's efforts to keep its customers were met with staunch resistance by Stevenson, who sent emails to Plaintiff advising that the Company's efforts were "an exercise in futility" and that the Willis' representatives were "wasting their time." (*Id.* at ¶ 36.)

While working as an account manager, Garcia accessed her Willis computer to copy and transfer confidential information, via the Internet, to Stevenson's personal email account. She did so both while Stevenson was employed and once he had resigned and was no longer working at Willis. (*Id.* at ¶ 37.) Garcia also accessed her Willis computer to copy and email confidential information to her own personal email account and to Stevenson's for the benefit of

3

BCSG. (*Id.* at ¶ 38.) This conduct is expressly prohibited by the Corporate Data Policy, Code of Conduct, and common law. (*Id.* at 39.) Garcia tendered her immediate resignation from Willis on December 19, 2008. Plaintiff now alleges that Stevenson solicited Garcia in violation of his Employment Agreement and that she is employed at BCSG. (*Id.* at 40.) Plaintiff also contends that Stevenson has likewise solicited and hired Lenora Sorola-Pohlman, another former Willis employee, in violation of his Employment Agreement. (*Id.* at 42.) At Stevenson's direction, an agent of BCSG contacted a Willis employee for the purpose of attempting to coerce that employee to divert to BCSG a commission check that Willis received from Wellpoint, Inc., a known customer. (*Id.* at 43.)

Plaintiff expended significant time, resources, and money in assessing the nature and extent of the unauthorized access of Willis' computer systems, which has caused or will cause losses in excess of $5000. (Pl. Compl. ¶ 44.) By letter dated December 15, 2008, Plaintiff notified Stevenson of his continuing obligations to Plaintiff. (*Id.* at ¶ 45.) In a second letter dated January 7, 2009, Plaintiff advised Stevenson that he was in breach of his post-employment obligation and demanded that he cease and desist from engaging in such unlawful activities. Pursuant to ¶ 8 of the Employment Agreement, Plaintiff also demanded that Stevenson pay liquidated damages in the amount of $1,680,874.13. (*Id.* at ¶ 46.) Plaintiff asserts that Stevenson continues to breach his Employment Agreement by soliciting and servicing known customers, that he has failed to return the confidential information that he stole from Plaintiff, and that he refuses to pay liquidated damages. (*Id.* at ¶ 47.) Plaintiff also alleges that Garcia has failed to return the confidential information she stole from Plaintiff. (*Id.* at ¶ 48.)

Plaintiff filed suit, alleging that Stevenson and Garcia ("the Individual Defendants") violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030, *et seq.*, as well as state law claims

of breach of contract, breach of duty of loyalty and fiduciary duty, misappropriation of trade secrets, conversion of business information and property, unfair competition, tortious interference with contractual relations, tortious interference with prospective economic/business relations, constructive trust, and civil conspiracy. Defendants filed this Motion to Dismiss, arguing that the Court lacks subject matter jurisdiction.

Defendants argue that Plaintiff's core state law claims are at the forefront of its allegations against Defendants. Defendants further argue that Plaintiff claims liquidated damages in the amount of $1,680,874.12 for violation of the state law claims, but that the CFAA claim enumerates damages in the amount of $5000.00. As a result, Defendants argue that the CFAA claim is "factually and legally suspect." Further, Defendants accuse of Plaintiff of forum shopping when its complaint is actually overpopulated with state law claims.

## II.   STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

## III.   ANALYSIS

### A. The Computer Fraud and Abuse Act

5

It is a violation of the Computer Fraud and Abuse Act for a person who, "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C.A. § 1030(a)(4) (2008). "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g). The statute also provides that a civil action may only be brought if the defendant's conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). The only one of the factors that applies to Plaintiff's claim is (c)(4)(A)(i)(I): loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value. The Third Circuit has divided the § 1030(a)(4) claim into four elements: "(1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Plaintiff alleges that its computers and computer systems used by the Individual Defendants during their employment are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are used in interstate and foreign commerce or communication, and Defendants intentionally accessed protected computers without authorization or in a manner that

6

exceeded their authorized access, and obtained, transferred, deleted and/or disclosed Plaintiff's Confidential Information. (Pl. Compl. ¶¶ 50-51.) Plaintiff further alleges that Defendants, knowingly and with the intent to defraud Plaintiff, accessed protected computers without authorization or in a manner that exceeded their authorized access, and by means of such conduct furthered the intended fraud and thereby obtained and disclosed Plaintiff's confidential information, and that the Individual Defendants intentionally accessed protected computers without authorization or in a manner that exceeded their authorized access, and thereafter disclosed Plaintiff's confidential information. (Pl. Compl. ¶¶ 52-53.) As a result, Plaintiff claims that Individual Defendants have caused, will cause, or will threaten to cause damage to the integrity of Plaintiff's confidential information in excess of $5000. (*Id.* at ¶ 54.) Plaintiff avers that these damages are ongoing and continue unabated. (*Id.* at 55.)

## B. Original Jurisdiction

Federal courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States" as well as those where there is "diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs." 28 U.S.C. §§ 1331, 1332. Plaintiff concedes that there is no diversity jurisdiction; therefore, the only issue before the Court is whether it has "federal question" jurisdiction over the dispute. A federal question exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (internal quotations omitted).

Plaintiff avers that the Court has jurisdiction because the action is based, in part, on the federal Computer Fraud and Abuse Act. Defendants argue that the Court does not have federal question jurisdiction because "a federal question is not an essential element of Plaintiff's suit and the question of federal law is not substantial to Plaintiff's claim." (Defs. Mot. at 5.) Defendants contend that Plaintiff's core claims focus on the alleged breach of contract by Stevenson and the Individual Defendants' alleged violations of the post-employment restrictive covenants. In support of its position, Defendants cites *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917-919 (5th Cir. 2001). Defendants also argue that Plaintiff's claim fails the federal question test set forth in *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983) and *Gully v. First National Bank in Meridian*, 299 U.S. 109 (1936), which held that a complaint creates federal question jurisdiction when it states a cause of action created by state law and (1) a federal right is an essential element of the state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial. Finally, Defendants argue that the Court cannot properly assert supplemental jurisdiction over Plaintiff's claims.

Plaintiff responds that all the cases cited by Defendants involve federal dismissals of state law causes of action that purportedly raised tangential federal issues. Plaintiff argues that the instant case is distinguishable because it has alleged a cause of action arising independently under federal law—the CFAA. Plaintiff further argues that the fact that these same allegations also support state law claims does not strip this Court of federal question jurisdiction, and that the Court should assert supplemental jurisdiction over Plaintiff's state law claims.

As Plaintiff suggests, the cases Defendant relies on are not on point. In *Franchise Tax Board*, the Supreme Court was asked to assert jurisdiction over a state law declaratory judgment claim based on state law. The Court also addressed whether appellant's state law claims were in

fact federal claims and determined that they were not. *Franchise Tax Board of the State of California v. Construction Laborers' Vacation Trust for Southern California*, 463 U.S. 1, 17-24 (1983). In *Howery*, the plaintiff mentioned federal regulations as part of a list of the defendants' alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"). 243 F.3d at 917-918. The Fifth Circuit held that this mention of federal law merely served to describe the conduct that violated the DTPA, not to allege a separate cause of action. In *Willy v. Coastal Corp.*, the Fifth Circuit declined to exercise federal question jurisdiction over the plaintiff's whistleblower claim because the federal statutes she referred to did not create a private right of action. 855 F.2d 1160, 1169-1170 (5th Cir. 1988). The Court of Appeals declined to entertain the plaintiff's wrongful discharge claim that he was fired for violating federal and state regulations because the plaintiff's federal law related theory was not essential to dispose of the claim.

In the instant case, Plaintiffs do not urge the Court to exercise jurisdiction based on state law claims which purportedly present a federal question. Instead, Plaintiff has presented an independent federal claim based on a federal statute which provides a private right of action. The Complaint does not simply mention federal law in the context of describing a state law claim. The presence of related state law claims does not alter the fact that Plaintiff's complaint, by virtue of its federal claims, presents a federal question. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997).

It is true that a complaint that alleges the existence of a frivolous or insubstantial federal question is not sufficient to establish federal jurisdiction. *Raymon v. Alvord Indp. Sch. Dist.*, 639 F.2d 257 (5th Cir. 1981) (holding that the plaintiff's claim was insubstantial when plaintiff, a high school student, argued that an insignificant decrease in her grade point average constituted a deprivation of a vested property or liberty interest without due process). The Fifth Circuit has

held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit. *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 n. 43 (5th Cir. 2003). Plaintiff's CFAA claim clearly meets this standard. Plaintiff sets forth the elements of the claim and alleges facts to support it. Whether Plaintiff will ultimately succeed on the merits of its CFAA claim is beyond the Court's inquiry: "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court." *Honeywell International, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 433 (5th Cir. 2005). The Court concludes that it has federal question jurisdiction over the dispute.

### C. Supplemental Jurisdiction

Defendants argue that, because the Court has no grounds for original jurisdiction, it cannot assert supplemental jurisdiction over Plaintiff's state law claims. Since the Court has found that it does, in fact, have original jurisdiction over the case, it will now consider whether it should exercise supplemental jurisdiction over Plaintiff's state law claims. The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), reads in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The statute further describes instances when the district court should decline to exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Court is also guided by the common law factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 601 (5th Cir. 2009) (citation omitted).

In the instant case, Plaintiff's claims, against both the Individual Defendants and Defendant B.C. Stevenson Group, L.L.C., are sufficiently related to warrant the Court's exercise of its supplemental jurisdiction—each claim is based on the Individual Defendants' departure from Willis and their subsequent establishment of a competing firm. Plaintiff's state law claims are not particularly novel or complex. Since the Court has not dismissed the CFAA claim, it must consider whether the state law claims predominate over the federal claims.

In *United Mine Workers v. Gibbs*, the Supreme Court held that when "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to the state tribunals." 383 U.S. 715, 726 (1966), codified in 28 U.S.C. § 1367. A district court will generally find substantial predomination when a state claim constitutes the real body of the case, to which the federal claim is only an appendage—"only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3rd Cir. 2003) (citations omitted).

Two sister courts have declined to exercise their supplemental jurisdiction when presented with similar facts. In *Rocky Mountain Twist v. Brackey*, No. CV07-119-M-DWM-JCL, 2008 WL 74419 (D.Mont. March 13, 2008), the plaintiff filed suit against a former

11

employee, alleging that he had attempted to learn trade secrets and use them to start a competing company. The plaintiff asserted six state law claims, including, among others, breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information, fraud, and interference with prospective business advantage. The plaintiff also asserted two federal statutory claims against one of the defendants. The district court declined to exercise its supplemental jurisdiction over the state law claims, holding that they predominated over the claims over which it had original jurisdiction. The court reasoned that the state law claims were alleged against multiple defendants and involved conduct ranging over a several month period, whereas the federal claims pertained to one defendant. Similarly, the court noted that the plaintiff sought "more comprehensive damages" in relation to his state law claims. The court concluded that the overall theory of the plaintiff's case was that the defendants had established a competitive business entity while still employed by plaintiff, and that the federal claims were at the periphery of the plaintiff's core state law claims. *Rocky Mountain Twist*, 2008 WL 744149 at * 7.

The trial court in *Contemporary Services Corp. v. Hartman*, No. 8-02967 AHM, 2008 WL 3049891 (C.D.Cal. Aug. 4, 2008) reached the same conclusion. The plaintiff sued a former employee, a software developer, who completely reformatted and erased her work computer's hard drive before leaving her employment. The plaintiff asserted six state law causes of action, including breach of contract, conversion, breach of fiduciary duty, fraud, and international interference with prospective economic advantage, as well as a CFAA claim. Defendants, in response, alleged five state law counterclaims. The trial court declined to exercise its supplemental jurisdiction because the plaintiff's state claims overwhelmed her CFAA cause of action. The trial court reasoned that the elements and facts the plaintiffs had to prove to establish

their state law claims were different from the proof needed to establish their other claims, and that the more numerous state law claims involved a broader scope of issues and proof than the CFAA claim. Further, the court noted that, with respect to the remedies sought, the state law claims also predominated. *Contemporary Services Corp.*, 2008 WL 3049891 at *4.

The Court respectfully disagrees with these holdings and believes that the factors should be given different weight. In the instant case Plaintiff's federal claim is alleged against two of the three defendants and arises out of roughly the same series of events as the state law claims. As discussed above, to prove its CFAA claim, Plaintiff must prove that the Individual Defendants accessed a protected computer without authorization or by exceeding such authorization as was granted, that they did so knowingly and with intent to defraud, and as a result furthered the intended fraud and obtained anything of value. The same sources of proof that support Plaintiff's CFAA claims will be used, in part, to demonstrate its state law claims. Plaintiff will argue that Stevenson and Garcia breached the Employment Agreement, the Code of Conduct, and the Corporate Data Policy, by transmitting confidential information to Stevenson's personal email account for the purpose of establishing a competing business. Proof of this activity also supports, in part, Plaintiff's breach of fiduciary duty, misappropriation of trade secrets, conversion, constructive trust, and civil conspiracy claims. Stevenson's emails transmitting the Leaman AORs to Audrey Stevenson could be used to support Plaintiff's breach of loyalty and interference with contractual relations claim.[2] While Defendants contend that Plaintiff have only alleged $5,000 in damages resulting from the CFAA claim, the court notes

---

[2] Plaintiffs advance an unfair competition claim. The Court notes that unfair competition is not a separate tort under Texas law but rather an umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to hones practice in industry or commerce. *Los Cucos Mexican Café v. Sanchez*, et al., No. 13-050578-CV, 2007 Tex. App. Lexis 3408, at *14 (Tex. App.—Corpus Christi 2007).

that this amount is the statutory minimum. Plaintiffs might ultimately prove that Defendants' CFAA violation caused much more economic damage.

In coming to this conclusion, the Court has also considered the common law factors of judicial economy, convenience, fairness, and comity. The case is in its infancy—it has only been pending before the Court for four months, this is the only substantive Motion which has been filed, and the Court has not held any hearings. Forcing the parties simultaneously to prosecute the case in two different courts, however, will require two different factfinders to listen to the same set of facts related to Stevenson's relationship with Plaintiff, his plan to set up a competing business, and his methods for executing that plan. In addition, the parties will expend more resources litigating both cases, and some witnesses will be required to give duplicative testimony in both proceedings. Substantive state law would govern the dispute in either forum. While allowing the state court to resolve the state claims would be in the interest of comity, federal courts frequently address such issues of Texas law, which are not unique or novel.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 26th day of May, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.